Peter MOSESIAN, Plaintiff-Appellant,

v.

PEAT, MARWICK, MITCHELL & CO., et al., Defendants-Appellees,

Charles L. FLETCHER and Milton Fredman, as Co-Trustees of Royal Inns of America, Inc., a California corporation, et al., Plaintiffs-Appellants,

v.

PEAT, MARWICK, MITCHELL & CO., a partnership, and Earl Gagosian, Defendants-Appellees.

Nos. 83–5638, 83–5639.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1983.

Decided March 7, 1984.

Melvyn I. Weiss, New York City, William S. Dato, David J. Yardley, Milberg, Weiss, Bershad, Specthrie & Lerach, San Diego, Cal., for plaintiffs-appellants.

Victor M. Earle, III, Peat, Marwick, Mitchell & Co., New York City, for defendants-appellees.

Before CHOY and ANDERSON, Circuit Judges, and SOLOMON,* District Judge.

SOLOMON, Senior District Judge:

These appeals present the issue of when the statutes of limitations began to run in these securities fraud cases.

Peter Mosesian, appellant, on behalf of himself and the other stockholders of Royal Inns of America, Inc. (Royal Inns), filed an action against the company's auditor Peat, Marwick, Mitchell & Co. (Peat Marwick). He alleged that Peat Marwick, in violation of its duty as a certified public accountant, issued false and misleading reports on the financial condition of Royal Inns and affiliated companies. He further alleged that on the basis of these reports, he and other

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

stockholders purchased or held Royal Inns stock and lost money.

Charles L. Fletcher and Milton Fredman, co-trustees in the bankruptcy of Royal Inns, filed an action on behalf of the bankruptcy estate against Peat Marwick on many grounds. They seek to recover the fees Royal Inns paid Peat Marwick to audit its books and the overpayments of income taxes resulting from Peat Marwick's improper accounting methods.

Peat Marwick denied these allegations and raised a number of affirmative defenses including the statute of limitations. The court segregated the statute of limitations defense and granted appellants a jury trial on that issue. The jury in the class action case rejected the statute of limitations defense and found that the class action was timely filed. The court entered judgment for Peat Marwick notwithstanding the verdict.

On the trustees' case, the court, on its own motion at the conclusion of the evidence, directed a verdict in favor of Peat Marwick.

Mosesian and the trustees appeal.

### Facts

Royal Inns was a public corporation with about 8,000 shareholders. It was founded in 1965 by Earl Gagosian with the idea of having the corporation enter into a number of limited partnerships with investors to build and operate motor hotels. It later expanded, and through subsidiaries, followed the same format to build and operate restaurants (Jolly Kings) and lounges (Lost Knights) in or near Royal Inns hotels. By 1973, there were sixty-nine Royal Inns hotels, fifty-two Jolly Kings restaurants and forty-five Lost Knights cocktail lounges.

In 1967, Royal Inns hired Peat Marwick as its auditor. To deal with Royal Inns' form of enterprise, Peat Marwick used two accounting procedures which are the basis of both of these actions.

First, Royal Inns listed as income "advances to" and "investments in" its joint ventures and limited partnerships. Royal Inns reported these items, so-called "receivables," at full value until 1972, when it established a huge reserve for bad debts. Plaintiffs alleged that a larger bad debt reserve should have been established before 1972.

Second, Royal Inns reported as income a construction fee, known as "development and construction profit" (DCP), which was equal to part of the capital investment of the other partners to its joint ventures. This concept allowed Royal Inns to recognize income on its construction projects although construction costs exceeded capital investment plus mortgage financing.

Royal Inns suffered losses from the operation of its hotels, restaurants and lounges, but its financial statements showed more than $7 million in DCP income over a period of several years. As long as it continued to expand and build new projects, Royal Inns could continue to claim DCP income on its books which exceeded operating losses and thereby show a net profit. Actually, however, new projects entailed increased operating losses.[1] When expansion slowed and there was less DCP to offset the operating losses, the financial statements began to show Royal Inns in a serious financial condition.

In 1975, Royal Inns filed a petition for reorganization under Chapter X of the old Bankruptcy Act.[2] The bankruptcy trustees investigated the collapse of Royal Inns and on December 22, 1976 submitted a detailed report that identified questionable accounting practices used by Peat Marwick and attributed in part the company's problems to those practices. Shortly after the report was made public, Peter Mosesian filed an action against Peat Marwick and others[3] on

1. In 1970, Royal Inns reported operating losses of $846,785. In 1972, its operating losses were $2,835,927.

2. Reorganization is now Chapter 11 of the new Bankruptcy Code.

3. A number of individuals involved with the corporation were named as defendants. Most settled with the class, and the settlement agreement was approved by the court. Only Peat Marwick is actively defending in this action.

behalf of himself and the other Royal Inns shareholders. Mosesian alleged violations of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and of Rule 10b–5, 17 C.F.R. § 240.10b–5. He also alleged common law fraud and breach of fiduciary duty.

The bankruptcy trustees brought a separate action on behalf of Royal Inns against Peat Marwick and Earl Gagosian. The trustees alleged conspiracy, breach of fiduciary duty, fraud, negligence, breach of contract, and a violation of former California Corporation Code § 3018. They sought to recover the fees Royal Inns paid Peat Marwick to audit its books, and also the income tax Royal Inns paid on DCP because they contend that DCP should not have been reported as income.

Because the events which form the basis of both actions occurred more than three years before the actions were filed, Peat Marwick raised a statute of limitations defense in each action. In the class action, Mosesian asserts that the three-year statute did not begin to run until the wrongdoing was discovered or until a reasonably prudent investor would have discovered it. Mosesian asserts that a reasonably prudent investor would not have been alerted or would not have discovered the wrongdoing until the trustees' report was made public just a few months before he filed the action. The district court bifurcated the trial and limited the first phase to the issue of when a reasonably prudent investor would

have discovered the alleged wrongdoing. The jury [4] found that the action was timely filed, but the district court granted Peat Marwick's motion for a judgment notwithstanding the verdict. Mosesian appeals.

The trustees in their action sought to avoid the statute of limitations defense. They assert that Earl Gagosian, the founder and president of Royal Inns, was involved in the fraudulent scheme, and that he dominated Royal Inns to such an extent that the company was incapable of bringing this action earlier. At the conclusion of the evidence, the district court on its own motion directed a verdict against the trustees. The trustees appeal.

### Discussion

#### I. The Class Action

■ Congress did not provide a statute of limitations for private actions brought under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. The federal courts therefore borrow the forum state's statute of limitations for fraud actions. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976); *Hilton v. Mumaw,* 522 F.2d 588, 601 (9th Cir.1975). The California three-year limit applies here. Cal. Code Civ.P. § 338(4); *United California Bank v. Salik,* 481 F.2d 1012 (9th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973).[5] State law determines the length of the limitations period; federal

---

**4.** There is no merit in Peat Marwick's contention that Mosesian was not entitled to a jury determination on the statute of limitations issue. *See Hilton v. Mumaw,* 522 F.2d 588, 601–02 (9th Cir.1975) (discussion of whether it is ever proper in a 10b–5 case to direct a verdict on the issue of the date upon which the plaintiff had a reasonable opportunity to discover the fraud); *State of Ohio v. Peterson, Lowry, Rall, Barber & Ross,* 651 F.2d 687, 694 (10th Cir.1981) (in an action under section 10(b), if the evidence does not permit the judge to decide as a matter of law that the plaintiff should have known about the fraud, then "a jury ultimately deciding the facts will determine whether the action accrued too remotely").

**5.** Peat Marwick urges us to apply instead the limitations period of section 18 of the Securities

Exchange Act of 1934, 15 U.S.C. § 78r(c). We decline. That section requires an action to be commenced "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." By its own terms, however, the limitations period in subsection 78r(c) applies only to "liability created under this section [78r]." Because Mosesian does not contend that Peat Marwick is liable under section 78r, that section's limitations period is inapplicable.

In addition, applying a period other than that of Cal.Code Civ.P. § 338 to a securities fraud case arising in California would be contrary to the law of this circuit. *E.g., United California Bank v. Salik, supra.*

law determines when the period begins to run, *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d 1301, 1309 (9th Cir.1982), which in this action is the date plaintiff discovered the fraud or could have done so in the exercise of reasonable diligence, *id.; Hilton v. Mumaw,* 522 F.2d at 602.

 Mosesian filed the class action complaint in January, 1977. The action is time-barred if Mosesian discovered or should have discovered the alleged wrongdoing before January, 1974. The question of when it was or should have been discovered is a question of fact. *Admiralty Fund v. Hugh Johnson & Co.,* 677 F.2d at 1309; *Robuck v. Dean Witter & Co., Inc.,* 649 F.2d 641, 644 (9th Cir.1980); *Hilton v. Mumaw,* 522 F.2d at 602. It may be decided as a matter of law only when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." *Kramas v. Security Gas & Oil Inc.,* 672 F.2d 766, 770 (9th Cir.), *cert. denied,* 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982).

 The standard is no less exacting, and is probably more exacting, when a court sets aside a jury verdict. A judgment notwithstanding the verdict is appropriate when "the evidence permits only one reasonable conclusion as to the verdict." *Flores v. Pierce,* 617 F.2d 1386, 1389 (9th Cir.1980) (quoting *Kay v. Cessna Aircraft Co.,* 548 F.2d 1370, 1372 (9th Cir.1977)). Neither the district court nor this court may weigh the evidence or order a result it finds more reasonable if substantial evidence supports the jury verdict. *William Inglis & Sons Baking Co. v. ITT Continental Baking Company, Inc.,* 668 F.2d 1014, 1026 (9th Cir.1981), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982).

Peat Marwick asserted that DCP was a generally accepted accounting practice at the time it prepared these statements, and it denies any wrongdoing. Nevertheless, it identifies seven "red flag" events which occurred in 1972 and 1973 and which it contends are sufficient as a matter of law to alert a reasonably prudent investor of wrongdoing on the part of Peat Marwick.

1. *Sudden Losses.* In each year from 1967 to 1971, Royal Inns reported a profit. In 1971, the profit was $1.1 million. In 1972, it reported a loss of $1.8 million.

2. *"Going Concern" Qualification.* In Royal Inns' 1972 annual report to stockholders, released in April, 1973, the report recited some of Royal Inns' financial difficulties and concluded: "Continuation of the Company as a going concern is dependent upon obtaining additional financing and negotiating satisfactory arrangements with the bank and creditors." But the report also asserts: "The accompanying financial statements have been prepared in conformity with generally accepted accounting principles which contemplate the continuation of the Company as a going concern."

3. *Decline in Stock Price.* On January 28, 1972, Royal Inns' stock was listed on the American Stock Exchange at $26.25 a share. On February 23, 1973, the price was $7.125 a share.

4. *Suspension of Trading.* On February 26, 1973, Royal Inns requested and received a suspension of trading in its stock on both the American and Pacific Coast stock exchanges. Neither exchange permitted further trading in spite of several requests by Royal Inns that trading be allowed to resume.

5. *Difficulty with Creditors.* In March, 1973, Royal Inns consulted a bankruptcy attorney for advice on its problems with creditors. This was widely reported in newspapers. Royal Inns and its creditors worked out a temporary moratorium on collections.

6. *Gagosian Resignation.* In March, 1973, Earl Gagosian resigned as the president and chief executive officer of Royal Inns. He continued on the board of directors and as a paid consultant.

7. *Class Action Against Jolly Kings Restaurants.* In October, 1972, a class action was filed on behalf of all partners against Jolly Kings restaurants. It alleged, among other things, violations of federal securities

laws. Peat Marwick was not named as a defendant.

■ Mosesian admits he was aware of some of these events but he did not suspect that the reported earnings were inflated by the use of either the DCP concept or artificially high receivables.[6] He testified that he did not suspect wrongdoing until the trustees' report was published in December, 1976.

■ An accounting expert called by Mosesian testified that nothing in his examination of the materials available to the public in 1973 made him suspect that DCP and accounts receivables were not reported in accordance with generally accepted accounting principles. An accounting expert called by Peat Marwick testified that after examining the books for four to five hours he was able to evaluate the propriety of the accounting and auditing practices used. He concluded that some of the information in the financial statements raised questions about Peat Marwick's practices, but he found no improprieties.

Most of the red flag events make it obvious that the company was in a poor financial condition. Peat Marwick reported the losses in the 1972 financial statement. Financial problems, however, do not necessarily suggest accounting fraud. Sudden losses, the "going concern" qualification, a decline in stock price, suspension of trading, difficulty with creditors, and the resignation of top management may also be explained by financial mismanagement, cost overruns, general market conditions, or other events unrelated to accounting fraud. *See Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d at 1310; *Admiralty Fund v.*

*Jones*, 677 F.2d 1289, 1294 (9th Cir.1982); *Briskin v. Ernst & Ernst*, 589 F.2d 1363, 1368 (9th Cir.1978).

In *Kramas v. Security Gas & Oil, Inc.*, 672 F.2d 766 (9th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 444, 74 L.Ed.2d 600 (1982), a case cited by Peat Marwick, the plaintiff actually knew of the alleged fraud. He consulted with the SEC and suggested to other investors the possibility of an action for fraud. There is no evidence here that Mosesian actually suspected fraud at any time before the trustees made their report public.

In other cases cited by Peat Marwick, in which the court disposed of notice issues as a matter of law, the representations made were contrary to well-known and highly publicized information which was generally available. *E.g. Jablon v. Dean Witter & Co.*, 614 F.2d 677 (9th Cir.1980); *Gaudin v. KDI Corp.*, 576 F.2d 708 (6th Cir.1978); *Hupp v. Gray*, 500 F.2d 993 (7th Cir.1974). Here, the events on which Peat Marwick relies are not obviously inconsistent with the financial statements.

There is no merit in Peat Marwick's contention that the class action complaint in *Serpa v. Jolly King Restaurants, Inc.*, No. 72–423–N (S.D.Cal. filed Oct. 10, 1972) was sufficient to notify Mosesian of Peat Marwick's alleged wrongdoing. Although other actions alleging similar misrepresentations may be a factor in deciding whether a plaintiff had notice, *Serpa* is not such a case. Peat Marwick is not mentioned, and there is no reference to overvalued receivables or DCP. We cannot say that as a matter of law the *Serpa* case put an informed stockholder of Royal Inns on notice

---

**6.** At this point, we are not concerned with the merits of the case. Solely for purposes of deciding the statute of limitations issue, we assume that Mosesian can prove his allegations that Peat Marwick acted improperly. The district court in granting Peat Marwick's motion for judgment notwithstanding the verdict, stated:

before I see this court spending, I would think, more than eight weeks together with the jury on the merits of this matter, I want to be told that there was enough evidence to

warrant a trial on the merits. If there was, obviously we'll have a trial on the merits, so I deny the motion for a new trial, but I'm going to grant a motion for judgment notwithstanding the verdict....

The district court erred insofar as it based its decision on a consideration of the merits of the case. Mosesian was not required to prove the merits of his case in this first phase, which was limited to whether the action was timely filed, and it was premature for the district court to consider the merits.

that Peat Marwick was guilty of fraud or other misconduct.

We find nothing in the record before the publication of the trustees' report in December, 1976 that would, as a matter of law, require Mosesian and other members of the class to question the legitimacy of Peat Marwick's accounting and auditing procedures.

The question of what a reasonably prudent investor should have known is particularly suited to a jury determination. The jury could have reached various conclusions from the evidence. In our view, the one it reached was reasonable and is supported by substantial evidence. It was therefore inappropriate for the district court to grant Peat Marwick's motion for a judgment notwithstanding the verdict. The judgment is reversed and the jury verdict reinstated. The case is remanded for a trial on the merits.

## II. *The Trustees' Action*

The bankruptcy trustees filed their action in April, 1977. Peat Marwick raised a statute of limitations defense. The trustees sought to avoid the defense on the ground that Royal Inns was so dominated by Gagosian that the company itself was unable to bring this action earlier.

■ A plaintiff who seeks to toll the statute because the corporation was dominated must show "full, complete and exclusive control in the directors or officers charged." *International Railways of Central America v. United Fruit Co.,* 373 F.2d 408, 414 (2d Cir.1967). The test is that "once the facts giving rise to possible liability are known, the plaintiff must effectively negate the possibility that an informed stockholder or director could have induced the corporation to sue." *Id.*

7. The trustees' causes of action based on the 1973 financial statement are still to be tried.

8. Examples from just the one paragraph of the report principally relied on by the trustees include the statements: "Gagosian has been described as a tyrant when it came to managing the affairs of Royal Inns," and "during the

The district court, on its own motion, directed a verdict against the trustees for all claims arising out of activities that occurred before 1972.[7] The court found no evidence in the record of domination. The trustees concede the lack of evidence in the record, but they assert that the district court improperly excluded their evidence on that issue.

■ The trustees contend that the rejected evidence, consisting of their testimony and report and the testimony of their attorney and accountant, supports their allegation that Gagosian dominated Royal Inns. However, we have examined the offer of proof of those witnesses, and we do not find any mention of domination or any facts from which domination can be reasonably inferred.

Some statements in the 61-page trustees' report may present evidence of domination. However, much of the report contains hearsay.[8] The district court need not separate the admissible parts from the inadmissible parts but can reject the entire offer. *Lane v. United States,* 142 F.2d 249, 253 (9th Cir.1944). It was not error to reject the report.

The trustees may have been able to offer other evidence that Gagosian dominated Royal Inns, but no admissible evidence of domination was offered. The district court properly directed a verdict in favor of Peat Marwick on the ground that the trustees' action was not timely filed.

There is no merit in any of the other contentions raised by the parties.

## Conclusion

There is substantial evidence to support the jury verdict in favor of Mosesian. It was error for the district court to grant a judgment notwithstanding the verdict. The district court's judgment in favor of

Company's crisis in late 1972, he [Gagosian] directed Company employees to withhold information from the Board." These statements without supporting information or identification of the persons making these statements are hearsay.

Peat Marwick is reversed and the jury verdict reinstated.

There is a lack of evidence that Gagosian dominated Royal Inns. Accordingly, we affirm the district court's decision to direct a verdict against the trustees.

Affirmed in part and reversed and remanded in part.