MALETZ, Senior Judge.
 

 Defendant-appellant Richard Poulos appeals from a grant of summary judgment dismissing his counter-claims against plaintiff-appellee Louis Bomstein and his cross-claims against defendant-appellee Philip Parent. Viewing the facts in the light most favorable to Poulos,
 
 see Poller v. Columbia Broadcasting System,
 
 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962),
 
 Hahn v. Sargent,
 
 523 F.2d 461, 464 (1st Cir.1975),
 
 cert. denied,
 
 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976), we hold that summary judgment was properly granted as to the counterclaims against Bomstein, but reverse and remand as to the crossclaims against Parent.
 

 I.
 
 Background
 

 In 1964, plaintiff-appellee Bomstein became the factor of Blier Cedar Company (Blier Cedar). In the course of time, Bom-stein received as partial security for his loans to Blier Cedar the personal guarantees of Rudolph Blier and Emma Blier (the Bliers), who were the controlling shareholders and the company’s sole 'officers and directors. Those personal guarantees were in turn secured by two mortgages on properties owned by the Bliers.
 

 In July 1974, Rudolph Blier and Bom-stein made arrangements with an attorney, Philip Parent, to foreclose the two Born-stein mortgages. Parent represented both the Bliers and Blier Cedar in connection with the foreclosure, which was commenced in March 1976 and ripened in March 1977. Parent prepared the notices of foreclosure and also two side agreements, one of which obligated Bomstein to reconvey the foreclosed property to the Bliers by quitclaim deed following the foreclosure if furnished with a new mortgage, and one of which required reconveyance of the property to both Blier Cedar and to the Bliers following the foreclosure. These agreements were never acted upon.
 

 In August 1978, Blier Cedar filed a voluntary Chapter XI petition for bankruptcy, and was adjudicated bankrupt on October 19, 1979. Poulos was appointed Receiver in July 1979, and Trustee in Bankruptcy in October 1979. He and other creditors filed involuntary bankruptcy petitions against the Bliers.
 

 
 *446
 
 In April 1983, Bornstein filed a diversity action in the federal district court in Maine seeking a declaratory judgment to the effect that he held title to the property he had obtained by foreclosure from the Bli-ers. Poulos, as trustee for Blier Cedar, was joined as a defendant, as were the Bliers, Parent, and other parties not here relevant. Poulos counterclaimed against Bornstein and crossclaimed against Parent. (Hereinafter all claims by Poulos are referred to as counterclaims.) Counterclaims I and II alleged that the Bornstein foreclosure had constituted a fraudulent transfer designed to defraud creditors of Blier Cedar; counterclaims III and IV alleged that under the law of estoppel and constructive trust the foreclosed property should be deemed to belong to Blier Cedar. Counterclaims V and VI alleged in effect that the Bliers were indebted to Blier Cedar and that they, together with Parent and Bornstein, had fraudulently transferred the foreclosed property so that the company as a creditor could not reach it. Counterclaims VII, VIII, and IX alleged that Parent had committed legal malpractice in representing both Blier Cedar and the Bliers in the foreclosure proceedings and in failing to perform legal services with reasonable care and skill.
 

 Both Bornstein and Parent moved for summary judgment on Poulos’ counterclaims. In response, Poulos, in order to establish that the foreclosure had constituted a fraudulent transfer, submitted affidavits to show that the Bliers were indebted to Blier Cedar; that the foreclosure had removed the Bliers’ property from the reach of Blier Cedar; that the mortgages had not been in default at the time of the foreclosure; that a secret reservation of interest in the foreclosed property existed in favor of the Bliers by virtue of the reconveyance agreements; that after the foreclosure Bornstein took no action to liquidate the mortgaged property; and that the Bliers remained in possession of the property, paid the taxes and costs of main-taming the property without reimbursement from Bornstein, leased the property to another, and represented to others that they owned the property.
 

 Against this background, a magistrate recommended that counterclaims I through IV be dismissed on Bornstein’s and Parent’s motions for summary judgment, in part on the ground that no property owned by Blier Cedar had been involved in the foreclosure and that the foreclosure therefore had had no effect on the creditors of Blier Cedar. The magistrate also recommended summary judgment for Bornstein and Parent on counterclaims V through IX on the ground that they were barred by the statute of limitations. The district court, without opinion, adopted the magistrate’s findings, dismissed all the counterclaims, and entered final judgment for Bornstein on his complaint. Poulos now appeals from the grant of summary judgment as to the counterclaims that were found barred by the statute of limitations.
 

 II.
 
 Poulos’ Claims against Bornstein
 

 The applicable Maine statute of limitations provides that all civil actions shall be commenced within six years after the cause of action has accrued. Me.Rev. Stat.Ann.tit. 14, § 752 (1964). That statute had run, since the foreclosure was commenced in March 1976 and ripened in March 1977, while Bomstein’s complaint for declaratory relief was not filed until April 1983, a period of more than six years after the cause of action accrued.
 
 [1]
 
 It is true that Maine’s discovery statute provides that in a case of fraud or fraudulent concealment, an action may be commenced at any time within six years after the person entitled thereto discovers that he has a cause of action.
 
 Id.
 
 § 859. However, Pou-los cannot claim late discovery for the purpose of tolling the six-year statute. This is because Poulos, as trustee, stands in the shoes of the company with regard to the counterclaims in issue.
 
 See Miller v. New
 
 
 *447
 

 York Produce Exchange,
 
 550 F.2d 762, 767-68 (2d Cir.),
 
 cert. denied,
 
 434 U.S. 823, 98 S.Ct. 68, 54 L.Ed.2d 80 (1977); 4A Collier on Bankruptcy ¶ 70.28, at 385 (14th ed. 1978). Not only were the Bliers the principal owners and officers of the Blier Cedar Company, the company was a signatory to the reconveyance agreement providing that Bornstein would reconvey the property to Blier Cedar and the Bliers following foreclosure. Thus, if the foreclosure was fraudulent, the company must be considered to have “discovered” the fraud at the time it engaged in that transaction.
 

 Poulos argues, though, that under
 
 Livermore Falls Trust & Banking Co. v. Riley,
 
 108 Me. 17, 78 A. 980 (1911), a corporate officer or anyone participating with a corporate officer who has acted to defraud a corporation cannot assert the statute of limitations in an action based on the fraud. Poulos, therefore, insists that Bornstein, who allegedly acted with the Bliers to defraud Blier Cedar, is estopped from pleading the statute.
 

 In
 
 Livermore,
 
 a corporation brought suit to recover on a promissory note signed by three defendants. One of the defendants was an officer of the corporation. He claimed that the suit as to him was barred by the statute of limitations. The Maine supreme court held that he was estopped to plead limitations on the ground that he had a fiduciary duty to the corporation with respect to the loan transaction, which he had violated, and that that violation amounted to fraudulent concealment.
 
 See Townsend v. Appel,
 
 446 A.2d 1132, 1133 (Me.1982);
 
 Bates Street Shirt Co. v. Waite,
 
 130 Me. 352, 356-57, 156 A. 293, 297 (1931) (the statute of limitations begins to run against directors in control of corporation only when they have given up control of the corporation).
 

 The holding in
 
 Livermore
 
 is based on principles of equity applicable to the obligations inherent in a fiduciary relationship. But here, Bornstein had no fiduciary relationship to the Blier Cedar Company, and the ruling in
 
 Livermore
 
 is thus inapplicable.
 
 [2]
 

 See Duttine v. Savas,
 
 455 F.Supp. 153, 161-62 (S.D. W.Va.1978) (defendants who were directors of bankrupt corporation and participated in illegal scheme held es-topped from pleading statute of limitations, while defendant who also participated in the scheme and who was director of a corporate subsidiary was not so estopped),
 
 affid sub nom. Diversified Mountaineer Corp. v. Duttine,
 
 612 F.2d 841 (4th Cir.1979).
 
 [3]
 

 Nor is Poulos’ action against Born-stein saved by application of the Bankruptcy Act statute of limitations, which provides in part:
 

 A receiver or trustee may,
 
 within two years subsequent to the date of adjudication
 
 or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy-
 

 11 U.S.C. § 29 (1976) (emphasis added).
 
 [4]
 
 The six-year Maine statute of limitations had not expired as of the bankruptcy adjudication on October 19, 1979, and Poulos therefore had two years from that date to bring suit for the alleged fraud. More than two years elapsed between that date and the commencement of this action. However, in cases of fraud, the two-year
 
 *448
 
 period may be tolled until the trustee learns of the fraud.
 
 See Berman v. Provencher,
 
 614 F.2d 823, 825 n.* (1st Cir. 1980);
 
 Dabney v. Levy,
 
 191 F.2d 201, 204-05 (2d Cir.),
 
 cert. denied,
 
 342 U.S. 887, 72 S.Ct. 177, 96 L.Ed. 665 (1951). Nevertheless, even if tolling is applicable, Poulos’ action would still not be timely. For the record is clear that Poulos learned of the fraud by the early part of 1980, more than two years before this action was brought in April 1983.
 
 See Westman v. Armitage,
 
 215 A.2d 919, 922 (Me.1966) (statute of limitations starts to run when existence of cause of action for fraud is discovered or should have been discovered by plaintiff in exercise of due diligence and ordinary prudence).
 

 In this regard, deposition requests filed by Poulos in February 1980 and depositions taken by him in March 1980 demonstrate that he knew at that time that the mortgage had been foreclosed; that a reservation of interest in the foreclosed property existed in favor of the Bliers; that Born-stein had taken no action to liquidate the mortgaged property; and that the Bliers, following the foreclosure, continued to pay taxes on the property, leased the property to someone else, and attempted to mortgage the property. Additionally, Poulos, as trustee of Blier Cedar, had reason to know of the alleged indebtedness of the Bliers to Blier Cedar. In fact, in his petition for involuntary bankruptcy filed against Emma Blier in January 1980, Pou-los certified under penalty of perjury that to the best of his belief Emma Blier was liable to Blier Cedar for fraudulent conduct and conversion or misappropriation of corporate assets in the amount of $2,500,000. In short, Poulos’ own admissions, and the contents of depositions taken by him, demonstrate that he had discovered his cause of action no later than March 1980. Therefore, because both the six-year and the two-year statutes of limitations had expired prior to the filing of this action, Poulos’ claims against Bomstein are barred.
 

 III.
 
 Poulos’ Claims against Parent
 

 By contrast with Poulos’ action against Bornstein, we hold that his action against Parent is not time-barred. The gist of Pou-los’ fraud and malpractice claims against Parent is that at the time of the foreclosure Parent, acting as the attorney for both Blier Cedar and for the Bliers, either negligently or fraudulently acted against Blier Cedar’s interests and in contravention of his duties as Blier Cedar’s attorney.
 

 Poulos argues that under the tolling rule of
 
 Livermore, supra,
 
 Parent is estopped from raising the statute of limitations. We agree, concluding that the reasoning of that case is applicable not only to corporate officers and directors but also to an attorney who has a fiduciary duty to the corporation. For as in
 
 Livermore,
 
 Parent allegedly violated a separate fiduciary duty to the corporation, namely, his duty to protect its interests in respect to the foreclosures involved, and did so at a time when the corporation was unable to protect its own interests.
 
 See also Bates Street Shirt Co. v. Waite, supra,
 
 130 Me. at 356-57, 156 A. at 297. We recognize that in
 
 Livermore
 
 the defendant was a corporate fiduciary by virtue of his position as a corporate officer whereas Parent was a fiduciary by virtue of his position as attorney. But we consider this a distinction without a difference, since in each case the defendant violated a significant fiduciary duty.
 

 Supporting this conclusion is
 
 Anderson v. Neal,
 
 428 A.2d 1189 (Me.1981). In
 
 Anderson,
 
 the Maine supreme court held that a cause of action by a client against his attorney for a negligent title search does not accrue for limitations purposes until the client discovers or reasonably should have discovered the cause of action. The court considered (1) the significant fiduciary relation between an attorney and client; (2) the great reliance a client must place on an attorney who performs a title search; and (3) the client’s lack of means of discovery in such a case, and concluded that the effect of these factors was to place the client in a situation akin to that of one who has had a cause of action fraudulently concealed from him.
 
 See id.
 
 at 1192. We note that
 
 Anderson
 
 is not directly in point since the Blier Cedar Com
 
 *449
 
 pany cannot claim late discovery, participating as it did in the transaction in question. Additionally,
 
 Anderson
 
 concerns legal malpractice only in the context of title searches. Nonetheless,
 
 Anderson
 
 teaches that at least in certain types of cases the Maine courts consider an attorney’s breach of fiduciary duty towards his client to be of such significance that the statute of limitations should be tolled against him until the client is able to protect his own interests. Moreover, as discussed above, there is a close analogy between the facts of this case and those of
 
 Livermore,
 
 in which another type of corporate fiduciary was deemed to have in effect concealed a cause of action by his breach of fiduciary duty. Given these considerations, we must conclude that Parent is estopped from asserting the statute of limitations as to Poulos’ claims against him.
 
 [5]
 

 IV.
 
 Conclusion
 

 For the foregoing reasons, the judgment of the district court is affirmed as to Pou-los’ claims against Bomstein and reversed and remanded as to his claims against Parent.
 

 Affirmed in part and reversed and remanded in part,
 

 ORDER
 

 Upon consideration of appellant’s motion for rehearing pursuant to Fed.R.App.P. 40 (a), we conclude that appellant’s motion for rehearing should be granted and find meritorious his contention that the grants of summary judgment in favor of Emma Blier and Rudolph Blier should be reversed. Consequently,
 

 IT IS HEREBY ORDERED that appellant’s motion for rehearing is granted and that the grants of summary judgment in favor of Emma Blier and of Rudolph Blier are hereby reversed.
 

 [1]
 

 . The counterclaims of Poulos tire considered filed as of the date Bomstein’s complaint was filed. Me.Rev.Stat.Ann.tit. 14, § 865 (1964).
 

 [2]
 

 . Indeed, in
 
 Livermore
 
 itself, the actions against two noncorporate-officer defendants who had also signed the note and who had no fiduciary relationship to the company were held barred by limitations.
 

 [3]
 

 . None of the cases cited by Poulos supports his argument that any person
 
 associating
 
 with a corporate fiduciary is estopped from pleading the statute of limitations. In all the cases so cited, the defendants who were held estopped were corporate fiduciaries.
 
 See, e.g., Borden v. Sinskey,
 
 530 F.2d 478 (3d Cir.1976);
 
 Bovay v. H.M. Byllesby & Co.,
 
 27 Del. Ch. 381, 38 A.2d 808 (1944);
 
 Jacksonville Public Service Corp. v. Profile Cotton Mills,
 
 236 Ala. 4, 180 So. 583 (1938).
 

 [4]
 

 . The bankruptcy proceedings were commenced under the old bankruptcy act on August 9, 1978.
 

 [5]
 

 . In his appellate brief, Parent makes a number of arguments to the effect that if we reverse the grant of summary judgment on the ground that the statute of limitations has not run, we should in any event find summary judgment in his favor was proper. We decline to address these contentions, which were rejected by the magistrate. For there is no indication that Parent presented any objections to the magistrate’s findings to the district court.
 
 See Scott v. Schweiker,
 
 702 F.2d 13, 14 (1st Cir.1983) (failure to file objections to magistrate's proposed findings and recommendations bars appellate review); Federal Magistrates Act, 28 U.S.C. § 636(b)(1) (1982); Fed.R.Civ.P. 72(b).