The **RESOLUTION TRUST CORPORATION,**
Plaintiff,

v.

**Michael R. GARDNER, Defendant.**

**Civ. A. No. 91–2226 (CRR).**

United States District Court,
District of Columbia.

July 30, 1992.

See also 788 F.Supp. 26.

Stephen K. White and Jane V. Saunders of Morrison & Hecker, Washington, D.C., for plaintiff.

Andrew L. Lipps, W. Anthony Fitch and Rebecca Lippman of Swidler & Berlin, Chartered, Washington, D.C., for defendant.

## OPINION

CHARLES R. RICHEY, District Judge.

Before the Court are the parties' cross-motions for partial summary judgment on the statute of limitations defense raised as to certain claims, and the plaintiff's motion to amend the complaint in the above-captioned case. The Court has carefully considered the submissions of the parties, the applicable law, and the entire record herein, and concludes that the plaintiff's motion to amend the complaint must be granted. The Court also finds that the statute of limitations in this case was tolled under the equitable doctrine of adverse domination. Therefore the plaintiff's motion for partial summary judgment shall be granted, and defendant's motion for partial summary judgment shall be denied.

## I. BACKGROUND

The Resolution Trust Corporation ("RTC"), in its corporate capacity, brings this action against the defendant, an attor-

ney who, it is alleged, received improper payments from Lincoln Savings & Loan Association ("Lincoln") and its subsidiary, Lincoln Communications ("LinCom"), at the direction of Charles H. Keating, Jr. ("Keating"). The RTC alleges that the defendant received these payments independently from the payments received for legal services by the law firm at which he was a partner, and that neither the defendant personally, nor his professional corporation "performed any services for Old Lincoln or LinCom warranting these fees". Complaint ¶ 12. The plaintiff asserts claims of unjust enrichment (Count I), breach of fiduciary duty (Count II), and aiding and abetting breach of fiduciary duty (Count III). In addition, in its motion to amend the complaint the plaintiff has proposed an additional count of legal malpractice (proposed Count IV).

The RTC bases its case on seven payments made to the defendant by Lincoln and LinCom between May 3, 1985 and December 4, 1986, which total $1.5 million.[1] Pl. Statement of Material Facts as to Which There is No Genuine Issue ("Pl. Facts") ¶ 37.[2] It is undisputed that at all times relevant to this action, the business decisions of Lincoln were controlled by Keating, although Keating never held any official title or office at Lincoln. Pl. Facts ¶ 5. On April 14, 1989, the Federal Home Loan Bank Board ("FHLBB") found that Lincoln was in unsafe condition for conducting business and that there had been a substantial dissipation of assets. FHLBB placed Lincoln into conservatorship under the management of the Federal Deposit Insurance Corporation ("FDIC"). Pl. Facts ¶ 6. All directors were removed from au-

thority by the federal regulators. Pl. Facts ¶ 8. On August 9, 1989, Lincoln was placed into receivership and with the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–073 (1989), the RTC became Conservator for Lincoln. On March 7, 1991, the RTC became receiver of Lincoln. Pl. Facts ¶ 6.

During the periods relevant to this action, Lincoln and LinCom's directors included Judy T. Wischer, Charles Keating, III ("Keating III"), Robert J. Kielty, Robert J. Hubbard, Jr., Andre A. Niebling, Kathryn Leary, Andrew F. Ligget, Bruce Dickson, and Mark S. Sauter. Pl. Facts ¶¶ 13–17. In addition, Wischer, Niebling, Sauter, Kielty, Hubbard, Robert Wurzelbacher and Dickson served as officers of Lincoln or LinCom or both at some time between January 1985 and April 14, 1989. Pl. Facts ¶¶ 18–21.

Almost all of these individuals have acknowledged civil or criminal liability for the management of Lincoln, or have been found liable in court. Keating has been convicted of securities fraud and is incarcerated. *Id.* ¶ 22. Keating III has been indicted for bank fraud and is scheduled for trial in August 1992. He has been sued by the RTC for racketeering, breach of fiduciary duty and negligence and has consented to entry of judgment against him in the amount of $30 million. *Id.* ¶ 23. Wischer pled guilty to bank fraud in connection with her participation in the management of Lincoln. She has been sued by the RTC for racketeering, breach of fiduciary duty and negligence and has consented to entry of judgment against her in the amount of $25 million. *Id.* ¶ 24.

---

1. There were seven payments consisting of the following amounts: May 3, 1985: $100,000; June 26, 1985: $250,000; August 16, 1985: $250,000; September 18, 1985: $200,000; November 18, 1985: $200,000; November 24, 1986: $250,000; December 4, 1986: $250,000. Pl. Statement of Material Facts as to Which There is No Genuine Issue ("Pl. Facts") ¶ 37. The parties dispute whether the payments were received by the defendant personally or by his professional corporation, Michael Gardner, P.C.. *See* Def. Statement of Material Facts as to Which There is A Genuine Issue, ¶ 37.

2. As required by the Local Rule 108(h), the parties provided statements of material facts not in dispute to accompany their motions for partial summary judgment. The Court shall cite to the relevant portions of the Rule 108(h) statements and, by reference, the evidence supporting the facts stated. While the parties dispute some of their opponents facts, and have raised issues regarding formal defects in each others' statements, the Court finds that these disputes are not material to the resolution of these motions. Accordingly, the Court relies only upon the factual propositions which are undisputed.

In addition, Ligget has pled guilty to bank fraud in connection with his participation in the management of Lincoln. He has been sued by the RTC for racketeering, breach of fiduciary duty and negligence and has consented to entry of judgment against him in the amount of $15 million. *Id.* ¶ 25. Dickson has pled guilty to criminal fraud in connection with his participation in the management of Lincoln. He has been sued by the RTC for breach of fiduciary duty and negligence and has consented to entry of judgment for the RTC in the amount of $7.5 million. *Id.* ¶ 26. Sauter has pled guilty to embezzlement of $1.6 million from Lincoln and of participation in a conspiracy with other officers and directors to create false documents. He has been sued by the RTC for breach of fiduciary duty and negligence and has consented to entry of judgment against him in the amount of $8 million. *Id.* ¶ 27.

Also, Kielty has been sued by the RTC for racketeering, breach of fiduciary duty and negligence and has consented to entry of a judgment for the RTC in the amount of $25 million. *Id.* ¶ 28. Hubbard has been sued by the RTC for racketeering, breach of fiduciary duty and negligence and has consented to entry of a judgment for the RTC in the amount of $15 million. *Id.* ¶ 29. Niebling has been sued for breach of fiduciary duty and negligence and has consented to entry of a judgment for the RTC in the amount of $5 million. *Id.* ¶ 30. The only other officer during the relevant period, Wurzelbacher, has not been subjected to civil or criminal liability; however, he has been indicted for criminal fraud. *Id.* ¶ 31.

The defendant had his first substantial contact with Keating during the presidential campaign of Secretary John Connally in 1978–79, for which Gardner was general counsel and Keating was an active fund raiser and senior campaign member. Def. Statement of Material Facts as to Which There Is No Genuine Issue ("Def. Facts") ¶ 1. In 1982, Gardner became a partner in the Washington, D.C. office of the law firm of Akin, Gump, Strauss, Hauer & Feld ("Akin Gump") where he established and directed the firm's communications practice. Def. Facts ¶ 2. In 1983, American Continental Corporation ("ACC")[3] became a client of Akin, Gump regarding communications-related matters, and, in addition, Keating consulted Gardner on a variety of business questions in the communications area. Gardner recommended that ACC enter the broadcasting business. Def. Facts ¶¶ 4–5.

The parties dispute the substance of the advice the defendant gave to Keating; however, it is undisputed that their discussions involved participation by ACC and Lincoln in the communications field · and possible takeover candidates. *See* Def. Facts ¶¶ 4–5; Pl. Statement of Genuine Issues and Disputed Facts at 1. The parties also dispute the nature of the payment arrangement by which the monies at issue in this case were paid to Gardner. It is undisputed, however, that timing and amounts of individual payments were not specifically agreed upon. *See* Pl. Facts ¶ 42; Def. Statement of Material Facts as to Which There Is a Genuine Issue ¶ 42. The parties agree that the defendant has never served as a director, officer, or employee of ACC, Lincoln, LinCom, or any related entity. Def. Facts ¶¶ 20–22.

## II. ANALYSIS

The parties dispute whether the statute of limitations has expired on all claims arising from the 1985 payments, which total one million dollars. The statute of limitations issue was previously raised by the defendant on a motion to dismiss, which the Court denied on March 25, 1992. *See* Memorandum Opinion filed March 25, 1992. The Court declined to dismiss the 1985 claims at that time, holding that a ruling on the issue was premature in a motion to dismiss because there were factual issues which would affect the decision. *Id.* The plaintiff has also filed a motion for leave to amend the complaint to include a count of

---

**3.** ACC acquired all of the stock of Lincoln in February 1984. Keating was the chairperson of

ACC. Pl. Facts ¶¶ 1, 3.

legal malpractice. The Court shall consider each of these motions in turn.

### A. Cross–Motions for Partial Summary Judgment on the Statute of Limitations Defense

■ Rule 56(c) of the Federal Rules of Civil Procedure requires that the Court grant a motion for summary judgment if the pleadings and supporting affidavits and other submissions "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). However, it is well established that the Court must believe the non-movant's evidence and draw all justifiable inferences in its favor. *Id.* at 255, 106 S.Ct. at 2513.

■ Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), the RTC may assert claims acquired from the financial institutions for which it is appointed receiver or conservator. FIRREA prescribes the applicable statute of limitations for these claims as:

(ii) in the case of any tort claim, the longer of—

(I) the 3-year period beginning on the date the claim accrues; or

(II) the period applicable under state law.

12 U.S.C. § 1821(d)(14)(A). A cause of action "accrues" within the meaning of the statute as follows:

For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14)(B).

The RTC's predecessor, the Federal Savings & Loan Insurance Corporation ("FSLIC") was appointed conservator for Old Lincoln on April 14, 1989. Complaint ¶ 2. The RTC was substituted as receiver on March 8, 1991. Complaint ¶ 3. Under District of Columbia law, the statute of limitations for this action is three years, which is the same period provided in the FIRREA statute. *See* D.C.Code § 12–301(8); 12 U.S.C. § 1821(d)(14)(A). Therefore, the claims as to the 1985 payments would have expired in 1988 unless under the provisions of FIRREA cited above, the appointment of the FSLIC as conservator or RTC as receiver revived the claims, or unless the plaintiff has demonstrated grounds for equitable tolling the statute of limitations. In its Memorandum Opinion of March 25, 1992, the Court ruled that FIRREA does not revive the plaintiff's 1985 claims. The question of equitable tolling is currently before the Court.

■ The plaintiff argues, *inter alia,* that the statute of limitations should be tolled in this case under the equitable doctrine known as "adverse domination". While the Court is aware of no cases in this jurisdiction recognizing the applicability of the adverse domination doctrine, it has been widely applied in other federal courts.[4] *See, e.g., California Union Ins.*

---

**4.** The defendant argues that the local law of the District of Columbia on tolling and accrual of the statute of limitations, rather than federal common law, should apply in this case. The District of Columbia Court of Appeals has not addressed the adverse domination doctrine. Even if it had, however, the Court does not believe that its ruling would be controlling in this context. There is some confusion on the issue of whether state or federal rules of accrual and tolling apply when a federal law borrows a state statute of limitations in a federal question case. *Compare IIT, Int'l Inv. Trust v. Cornfeld,* 619 F.2d 909, 929 (2nd Cir.1980); *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1199 (9th Cir.1988); *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1522 (10th Cir.1990) (and cases cited therein). The Supreme Court's opinion in *West v. Conrail,* 481 U.S. 35, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987) suggests that questions of tolling are governed by state law, but questions of accrual are governed by federal law. 481 U.S. at 40 & n. 6, 107 S.Ct. at 1542 &

*Co. v. American Diversified Sav. Bank,* 948 F.2d 556, 565–66 (9th Cir.1991); *Farmers & Merchants Nat'l Bank v. Bryan,* 902 F.2d 1520, 1522–23 (10th Cir.1990); *Bornstein v. Poulos,* 793 F.2d 444, 447–449 (1st Cir.1986); *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir.), *cert. denied,* 469 U.S. 932, 105 S.Ct. 329, 83 L.Ed.2d 265 (1984); *IIT, Int'l Inv. Trust v. Cornfeld,* 619 F.2d at 931–32; *FDIC v. Howse,* 736 F.Supp. 1437, 1441 (S.D.Tx.1990); *FSLIC v. Williams,* 599 F.Supp. 1184, 1193–94 (D.Md.1984); *FDIC v. Bird,* 516 F.Supp. 647, 651–52 (D.P.R. 1981). Under the doctrine, a cause of action will be tolled during the period that a plaintiff corporation is controlled by wrongdoers. Tolling is considered appropriate because where culpable directors and officers control a corporation, they are unlikely to initiate actions or investigations for fear that such actions will reveal their own wrongdoing. *See, e.g., FSLIC v. Williams,* 599 F.Supp. at 1193–94; *FDIC v. Howse,* 736 F.Supp. at 1441.

The defendant argues that this Court should not apply the adverse domination doctrine because it has never been adopted in this jurisdiction. Moreover, even if the Court does adopt the adverse domination doctrine, defendant argues, the doctrine would not apply in this context because it tolls the statute of limitations only with respect to officers and directors who controlled a corporation. Since Gardner was neither an officer nor a director of ACC, Lincoln, LinCom, or any related entities, defendant contends the statute of limitations should not be tolled with respect to him.

■ The defendant's arguments are not persuasive. First, the Court shall adopt the equitable tolling doctrine of adverse domination, because while no cases address it in this jurisdiction, the Court is persuaded by the many cases in various federal jurisdictions which adopt it. *See* cases cited *supra* at 795. Moreover, defendant attempts to unduly restrict the reach of the adverse domination doctrine. Contrary to defendant's contention, the doctrine has been applied in cases involving defendants who were neither officers nor directors of the corporation.[5] *See, e.g., Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d at 879 (accountant); *Bornstein v. Poulos,* 793 F.2d at 447–449 (attorney); *IIT v. Cornfeld,* 619 F.2d at 929–30 (accountant, stockbroker); *FSLIC v. Williams,* 599 F.Supp. at 1194 (lower level employee); *RTC v. Keating,* 794 F.Supp. 1424, 1453 (D.Az. 1992) (outside law firm). Notably, in *Keating,* the adverse domination doctrine was invoked by Judge Bilby to toll the statute of limitations in another suit by the RTC against a law firm arising out of the Lincoln collapse. *Keating* at 1453.[6]

Having determined that the adverse domination doctrine applies in the case at hand, the Court also concludes that under the adverse domination doctrine, the statute of limitations must be tolled for the payments made in 1985. The undisputed evidence reveals that Lincoln and LinCom were controlled by wrongdoers during all relevant time periods herein. Of the nine individuals who served as officers and directors of Lincoln and LinCom, eight of them have either accepted criminal and/or civil liability, or been convicted of crimes relating to

n. 6. However, FIRREA provides that three years is the applicable statute of limitations in this case, unless local law provides a longer statute of limitations. 12 U.S.C. § 1821(d)(14)(A). As the applicable statute of limitations under D.C. law is also three years, D.C.Code § 12–301(8), the federal limitations period applies. Therefore, the Court shall apply federal law of tolling and accrual to interpret the statute of limitations provided by the federal statute.

**5.** In some of these cases, courts found that the facts did not support tolling; however, the ap-

plicability of the adverse domination doctrine to the case was accepted. *See, e.g., Mosesian* at 879.

**6.** The defendant has noted a few cases in which the adverse domination doctrine was not applied to parties who were neither officers nor directors. *See FDIC v. Shrader & York,* 777 F.Supp. 533, 535 (S.D.Tx.1991); *FDIC v. Leonard,* Civil Act. No. 91–1773 (E.D.Va. May 1, 1992) (Order and motions hearing transcript at 83) (Def.Ex.P). In these cases, however, little of the reasoning behind the decision not to invoke adverse domination is explained; therefore this Court declines to follow these decisions.

the management of Lincoln. *See* discussion *supra* at 795. The defendant has made no real effort to dispute that the corporations were not in a position to sue Mr. Gardner without casting possible light upon their own wrongdoing. Lincoln and LinCom were not in a position to protect their own interests. Moreover, the Court notes that the defendant, as an attorney for Lincoln, was in a fiduciary relationship with the corporation, which further decreased the likelihood of Lincoln bringing suit against him.

The RTC has raised additional arguments as to why the statute of limitations does not bar the 1985 claims in this case including the applicability of the continuing tort doctrine, the discovery rule and the continuing representation rule; however, because the Court concludes that the statute of limitations is tolled under the doctrine of adverse domination, it need not consider these additional arguments.

### B. *Motion to Amend Complaint*

Plaintiff has moved for leave to amend its complaint to assert a legal malpractice claim. Plaintiff alleges that the defendant committed legal malpractice by entering into an unfair business arrangement in violation of his fiduciary duties and ethical obligations.

The defendant argues that the motion should be denied because he would be prejudiced by the addition of the new count, the new count is added to harass him, and because the new count fails to state a claim upon which relief may be granted. Moreover, defendant points out that the new count was proposed almost nine months after the complaint was filed.

■ Under Fed.R.Civ.P. 15, "leave to amend shall be freely granted when justice so requires." A motion to amend a complaint should be granted unless there is a "clear and solid justification" for denial. *Monroe v. Williams,* 705 F.Supp. 621, 623 (D.D.C.1988). Denial is permitted if, for example, the amendment would result in delay or undue prejudice to the opposing party. *Williamsburg Wax Museum v. Historic Figures, Inc.* 810 F.2d 243, 247

(D.C.Cir.1987). Here, while the defendant has opposed the motion, he has not demonstrated sufficient reason for this Court to deny it.

■ The defendant contends that the RTC unduly delayed the addition of this claim, and did so in bad faith. The defendant claims that the only reason the RTC now asserts an additional claim is to increase the pressure on the defendant to settle this case. The RTC "denies unequivocally" the defendant's contention that the delay in amending the complaint is a strategic move. Rather, the RTC states that the amendment is designed as an elaboration of the breach of fiduciary duty claim, and intended to provide the defendant with more detail of the claims he faces. The RTC explains that the claim was added after the defendant stated that he received the compensation at issue in this case pursuant to an agreement between himself and his clients. *See* Def.'s Response to Plaintiff's First Set of Interrogatories and Requests for Admission, Request for Admission No. 3 (Pl. Reply, Ex. A). Plaintiff contends that this information indicates that the defendant committed malpractice by making the agreement without advising his client that it was a one-sided, unfair arrangement.

Based on this explanation, it appears to the Court that the amendment is justified and bad faith has not been demonstrated. While it would have been preferable for the RTC to file its legal malpractice claim sooner, the defendant has not demonstrated that he will be prejudiced by the addition of the claim now. This case is still in the midst of discovery, and trial is not scheduled until November, 1992. The claim is similar to the breach of fiduciary duty claim; therefore the evidence necessary to defend will likely be quite similar. Moreover, the amendment should not unduly burden the Court.

The defendant also argues that the amendment should not be permitted because it is futile—the new count could not withstand a motion to dismiss. *See, e.g., Brereton v. Communications Satellite*

*Corp.*, 735 F.Supp. 1085, 1089 (D.D.C.1990), *appeal dism.;* 925 F.2d 488 (D.C.Cir.1991); *Monroe*, 705 F.Supp. at 623. The legal malpractice claim is based on Gardner's alleged violation of Disciplinary Rule 5–104(A) of the District of Columbia Code of Professional Responsibility ("Code") and Ethical Rule 1.8 of the District of Columbia Rules of Professional Conduct. The defendant contends that the claim would be dismissed because a violation of disciplinary rules does not constitute legal malpractice. Indeed, the Code explicitly refrains from defining standards for civil liability.[7] Yet certainly the violation of disciplinary rules does not preclude malpractice liability.

To state a claim for legal malpractice, a party must prove: (1) that there existed an attorney-client relationship; (2) that the attorney breached the duty of reasonable care; and (3) the negligence resulted in and proximately caused damage to the client. *Law Offices of Jerris Leonard, P.C. v. Mideast Systems, Ltd.*, 111 F.R.D. 359 (D.D.C.1986); *Chase v. Gilbert*, 499 A.2d 1203, 1211 (D.C.1985); *see also Knupp v. Schober*, 1992 WL 182323 at *2, 1992 U.S.Dist. LEXIS 9937 at 3 (D.D.C. July 14, 1992). In proposed Count IV, the plaintiff alleges that the defendant, while providing legal advice to Lincoln and Lin-Com, negligently failed to

> exercise the degree of care and skill commonly possessed and exercised by reasonable, careful, and prudent attorneys, by failing to give Old Lincoln his undivided loyalty and fidelity, and by failing to comply with the standards set forth in the applicable codes of professional conduct.

Amended Compl. ¶ 42. The proposed amendment includes a detailed list of the specific alleged incidents of malpractice and breaches of fiduciary duty. *See* Amended Compl. ¶¶ 43–45. The plaintiff also claims that these alleged deficiencies proximately caused damages in the amount of $1.5 million. Amended Compl. ¶¶ 46–47. These allegations state a claim for legal malpractice and are sufficient to withstand a motion to dismiss. *See Conley v. Gib-*

*son*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (motion to dismiss may be granted only when the moving party has shown "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

The defendant also claims that the proposed amendment is futile because it is repetitive and subject to a motion to strike pursuant to Fed.R.Civ.P. 12(f). The Court agrees that the proposed amendment could have been drafted more concisely. However, striking claims under Rule 12(f) is a drastic action and is viewed with disfavor. *Stabilisierungsfonds Fur Wein v. Kaiser Stuhl Wine Distributors Pty. Ltd.*, 647 F.2d 200, 201 (D.C.Cir.1981); 5A C. Wright & A. Miller, *Federal Practice & Procedure* Civil 2d § 1380. The repetitive nature of some of the allegations in proposed Count IV does not justify the drastic action of striking the claim. Therefore, the defendant cannot base his futility argument on Rule 12(f).

The Court therefore concludes that allowing the plaintiff to amend the complaint will not prejudice the defendant or the Court and would not be futile. Therefore the Court shall grant the RTC's motion for leave to amend the complaint.

## III. CONCLUSION

For all of the reasons previously stated herein, the Court shall grant the plaintiff's motion for partial summary judgment, and shall deny the defendant's motion for partial summary judgment. In addition, the Court shall grant the plaintiff's motion for leave to amend the complaint.

---

**7.** *See* District of Columbia Code Professional Responsibility, Preliminary Statement (1991).