### RUFUS MANSUR *vs.* EBEN C. BLAKE.

### CHARLES H. SLEEPER *vs.* SAME.

*Deed—construction of. Easement. Mills. Practice. Prescription.*

When the lines of a deed beginning at a road, run thence to an artificial pond; thence by the side of the same a specified distance; thence by a line parallel with the first line to the road; thence to the place of beginning;—the grant is to the centre of the pond.

When the line on such pond begins at the middle of a bridge; thence joining the pond to the corner of another lot which extends to the centre of the same pond—the grant reaches to the middle thread of the stream. When a lot of land is bounded by a pond artificially created by the flowing of a stream by a mill-dam, the same rule applies to the pond as was applicable to the stream before the dam was built.

Mansur *v.* Blake.

When the owners of a mill claim an easement by prescription in another's lot, and the mill and the lot in which the easement is claimed are, during part of the twenty years next preceding, owned by the same person, the time of such ownership is excluded from the period required to establish a right by prescription.

When there is an offer of evidence to prove an easement in a lot of the plaintiff, and likewise a disseisin of the same lot for more than six years, and a specific objection is made, confined to the evidence offered to prove the easement and is sustained, it cannot be regarded as an exclusion of the evidence offered to prove a disseisin.

ON REPORT.

TRESPASS *quare clausum* for depositing logs upon the plaintiffs' lots, which they claimed extended to the centre of the Meduxnekeag stream in Houlton, where a mill-pond had been formed by the dam connected with the Kelleran Mill (so called), in that town.

The defendant denied that the plaintiffs' land went beyond the shore of the pond, and by brief statement claimed ownership of the *locus in quo*, and also an easement to flow the same and deposit logs thereon, acquired by more than twenty years uninterrupted and undisputed exercise of that privilege, under claim of right ; "that Rufus Mansur, on the sixteenth day of May, 1857, then owning both the Kelleran Mill and Privilege and the *locus in quo*, by his warranty deed of that date, conveyed the said sawmill and all the privilege thereunto belonging, to Henry Sincock, and that the said right and easement to lay logs upon the *locus in quo* was then used and enjoyed by said Mansur, and was conveyed to said Sincock in connection with said mill ; and the defendant, under said Sincock and legal conveyance, has held and enjoyed the said right of laying and depositing his logs upon the *locus in quo* as aforesaid, the continued exercise of which is the trespass complained of" in these actions. "And further, the said defendant says that if the plaintiffs and those under whom they claim were ever seized of the *locus in quo*, they were disseised by the defendant and those under whom he claims more than six years before the commencement of this action, and so the same is barred by the Statute of Limitations."

The phraseology of the title deeds under which the plaintiffs derive title, is sufficiently stated in the opinion. The report recited that the "defendant offers to prove that he and those under whom he claims have for a period of more than twenty years prior to the commencement of this action enjoyed the easement in connection with his saw mill and privilege in Houlton, called and known as the Kelleran Mill and Privilege, as set forth in his brief statement in this case ; and also that he and they have had adverse possession of the *locus in quo* for more than six years next before the commencement of this action, by depositing his and their logs thereon, and placing booms to hold the same, and removing stumps and other obstructions therefrom. The plaintiffs objected to the evidence of the defendant to show an easement, because (as the defendant admits) the plaintiffs were the owners of both the dominant and servient estate from 1852, to May 15, 1857. The presiding judge sustained the objection and rejected the evidence."

*L. Powers, Madigan & Donworth,* for the plaintiffs.

*Jos. Granger* and *C. M. Herrin,* for the defendant.

APPLETON, C. J. "Fresh water rivers, of what kind soever, do, of common right," observes Lord Hale, "belong to the owners of the soil adjacent ; so that the owners of one side have of common right the propriety of the soil, and consequently the right of fishing, *usque filum aquæ* ; and the owners of the other side the right of soil, ownership and fishing unto the *filum aquæ* on their side." *Prima facie,* the owner of each bank of a stream is the proprietor of half the land covered by the stream. The conveyance of land bounded upon a highway or innavigable stream, carries the grantee to the centre, unless there be decided and controlling or specific description showing a contrary intent. "The law," observes Cowen, J., in *Starr v. Child,* 20 Wend., 152, "does not stop to criticize the words by which a man is made owner ; it inquires, 'Is he the shore owner ? If that be so, he touches the water.' "

The owner of land touching the water of a stream, goes to the centre. *Herring v. Fisher*, 1 Sandf., 344.

Where a lot of land is bounded by a pond artificially created by the flowing of a stream by a mill-dam, the same rule applies to the pond as to the stream before the dam was built. If the line of land conveyed be described as commencing by the side of a mill-pond created by a dam across a stream, and thence running from the pond and returning to another stake "by the side of the river or mill-pond," and running "by the said pond to the first mentioned bounds," the grant extends to the thread of the river. *Lowell v. Robinson*, 16 Maine, 357. A grant of land bounded by a pond artificially raised, is presumed to go to the centre of the stream. *Robinson v. White*, 42 Maine, 216.

Where land is bounded by a pond in its natural state, the grant, it would seem, extends only to the water's edge. *State v. Gilmanton*, 9 N. H., 461.

July 22, 1826, Samuel Kendall and wife conveyed a tract of land to John Partridge, the boundaries of which, so far as they are material to this case, are as follows: "thence north ten degrees and thirty minutes to the mill-pond ; thence northerly by the side of the pond to the first mentioned bounds," &c. The line to the pond touches the water. The line therefrom goes by the side of the pond,—that is, by the pond. It is immaterial whether the language is by the pond, or by the side of the pond. The meaning is the same. *Lowell v. Robinson*, 16 Maine, 360.

Eunice Kendall on the thirteenth day of August, 1834, conveyed to Seth W. Eels, from whom the plaintiff derives title, a tract of land described as follows, viz. : "beginning at the south-westerly part of a piece of land which I sold and deeded to Mr. Partridge, being the same piece of land that is recorded in the registry of deeds for the northern district in the county of Washington, book number two, page number two hundred and five, where said land joins the town road; thence southwesterly by said road till it forms a junction with the Maine military road in the centre of a bridge built by the general government ; thence northerly and

easterly around a certain piece of land joining the mill-pond, as was flowed in the year of our Lord, 1814, till it comes to the bounds of the aforesaid Partridge lot; thence by said land to bounds first mentioned."

The first monument on the water is the middle of a bridge. Thence "around a piece of land joining the mill-pond, as was flowed in 1814." The land, for aught that appears, is flowed as much now as then. The land conveyed touches the water in its whole length by the pond. It could not join the mill-pond, if not in contact therewith. The water of the pond is a boundary. Whether the land is bounded on a stream or pond, or joins a stream or pond, can make no difference. In either case, it touches the water;—and the law carries the grant to the centre of the stream or pond which it touches in all cases unless this conclusion is rebutted by the peculiar language of the grant. Nothing in the language of the deed tends to negative the general presumption of law that a proprietor owning to the water of a stream owns to its centre. The water line runs from the centre of the bridge to the bounds of the Partridge lot, which, as has been shown, is in the centre of the pond, touching the water all the way and carrying the same rights to the grantee as if the line had run on or by the pond.

The right to flow existed in 1814. The deed to Eels assumes the existence of that right. The title of his grantor was probably subject thereto. This clause was inserted as an intimation of the fact and a restriction upon the covenants, not as a limitation of the grant.

Nor are these views at variance with adjudicated cases. In *Bradford v. Cressey*, 45 Maine, 9, the line run not on the creek, but on the west bank of the creek; and therefore, not touching or joining the water. In *Lapish v. Bangor Bank*, 8 Maine, 85, the description commenced the line of boundary at a stake on the bank, and returned it to a stake and stones on the bank, and connected the points by a line running on the bank to high-water mark at the first bound.

It was in evidence that the plaintiff, Mansur, between 1852 and

May, 15, 1857, was the owner of the land upon which the alleged trespass was committed, and the mill now occupied by the defendant.

The trespass complained of consists in the defendant building a boom and in booming logs therein, for the use of his mill. The acts done are admitted or proved, and the defendant justifies upon the ground that he and those owning the mill before him had acquired by prescription an easement to lay logs for the use of the mill upon the land where the alleged trespass was committed; and that the plaintiff had been disseised by the defendant more than six years before the commencement of this suit.

The defendant offered to prove that he and those under whom he claims have for a period of more than twenty years prior to the commencement of this action, enjoyed the easement in connection with his said mill and privilege in Houlton, called and known as the Kelleran Mill-Privilege, as set forth in his brief statement in this case; and also that he and they have had adverse possession of the *locus in quo* for more than six years next before the commencement of this action, by depositing his and their logs therein and placing booms to hold the same, and removing stumps and other obstructions therefrom.

The plaintiff objected to the evidence to show an easement, because, as the defendant admits, the plaintiff was the owner of the dominant and servient estate from 1852 to May 15, 1857. This objection was sustained and the evidence excluded.

The lot in which the easement is claimed is some —— rods distant from the defendant's mill and lot, other lots intervening between them. An easement in another's land may be acquired by grant or by twenty years of adverse, continuous and open enjoyment. No grant is pretended. As the plaintiff could not have an easement in his own land, the five years, during which he was the owner of both estates, must be excluded, and then there is no offer made which would give the defendant an easement by prescription. The evidence was properly excluded.

The law is well settled that where a disseisin has continued more than six years, the disseisor is entitled to betterments, and

that the disseised owner cannot maintain trespass *quare clausum* for acts done during the time of such adverse possession. *Chadbourne v. Shaw*, 22 Maine, 450. *Paine v. Marr*, 35 Maine, 182. To enable him to maintain such action, he must regain possession.

But the defendant cannot invoke this principle of law, because the objection was only made to the evidence offered to establish an easement. It did not apply to that offered to show adverse possession. The exclusion was precisely commensurate with the objection ; so that, for aught appearing, the defendant might have introduced the evidence offered if it had existence.

A log owner who builds a boom upon another's land to hold logs to be sawed at his mill, is not within any of the provisions of R. S., c. 43, and is liable in trespass for such erections when made on the land of another.　　　　　　　　　*Default to stand.*

WALTON, DICKERSON, BARROWS and PETERS, JJ., concurred.